UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUBWAY FRANCHISE SYSTEMS OF CANADA, ULC,

       Petitioner,

-against-

SUBWAY DEVELOPMENTS 2000, INC.,

       Respondent.

24-cv-593 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

  Subway Franchise Systems of Canada, ULC ("Subway") petitions the Court to vacate an arbitration order. Subway Developments 2000, Inc. ("Developments") moves to dismiss Subway's petition, or in the alternative to confirm the order.

## BACKGROUND

  Developments filed an arbitration against Subway on October 13, 2022, related to Developments' claims that Subway wrongfully terminated two development-agent agreements between the parties. The arbitration is ongoing.

  As relevant here, section 18 of each agreement says:

> This section shall apply to the resolution of any dispute between the parties regarding termination of this Agreement by the Company. If the Company terminates this Agreement, and the Development Agent disputes the termination, the Development Agent must file a demand for arbitration[.] … The parties agree to use their best efforts to conclude the arbitration proceeding within sixty (60) days from the date the arbitration demand is filed. This arbitration shall be limited to a demand for a Declaratory Judgment by the arbitrator to determine whether the termination is invalid, a request for an award reinstating the Development Agent and damages (including attorneys' fees as hereinafter provided). The decision of the arbitrator shall be restricted to a ruling on the validity of the termination and an award or denial of the request for reinstatement, and damages. The arbitrator shall render a decision within fourteen (14) days after the conclusion of the arbitration hearing. <u>For the period between the effective date of the termination and the date of [the] arbitrator's decision, the Company shall pay the Development Agent at 50% of the amount otherwise due in accordance with this Agreement</u>. If the termination is determined to have been wrongful, the Company shall be required to reinstate the Development Agent and pay to the Development Agent the remaining 50% of any compensation that was withheld for the period. If the termination is determined to have been proper, the Development Agent shall refund all compensation paid by the Company for the period … after the effective date of the

> termination. In addition, the prevailing party in any such proceeding shall have its reasonable attorney fees paid by the other party.

Dkt. 1-2 § 18 (emphasis added). So between the date of termination and the date of the arbitrator's decision, section 18 requires Subway to pay Developments 50% of what Developments would otherwise be owed under the contracts.

In January 2023, Subway took the position that it was excused from making the interim payments contemplated by section 18. Dkt. 30-7. When Developments brought this to the arbitrator's attention, Subway agreed to continue making payments despite its position, and so the arbitrator declined to rule on the issue. Dkt. 30-8 at 23:9–24:6; *see also* Dkt. 30-9 at 36:14–38:2.

Subway continued sending Developments the 50% payment contemplated by section 18, but in August 2023, Subway wired the June 2023 payment into the trust account of its own lawyers instead of sending it to Developments. Dkt. 1-10 at 1. Subway informed Developments that it had done so "pending resolution of how to handle the payments already made, and those which have and will accrue." *Id.* Developments brought this to the arbitrator's attention. Dkt. 1-11.

During an October 4, 2023 hearing, the arbitrator ordered Subway to continue making the interim payments. Dkt. 30-11 at 90:25–92:1. The arbitrator acknowledged Subway's argument that she lacked authority to decide the interim payment issue. But she explained that Subway had failed to make an objection in writing when the issue was briefed and argued in January 2023, and this failure constituted waiver under the governing AAA Commercial Rules. *Id.* at 69:20–71:7; *id.* at 82:17–22. She also explained that she had authority under section 18 because the interim payments implicated "a dispute concerning the termination of the agreement," which falls within the "any dispute" language of section 18. *Id.* at 70:16–25; *see also id.* at 73:14–74:2. And she noted that this was not a case where her order would be "expressly unavailable [under] or directly contrary to the arbitration agreement in question." *Id.* at 82:25–83:4.

On January 12, 2024, the arbitrator issued a written order memorializing the decision "[p]ronounced" on October 4, 2023. Dkt. 1-1 at 1. Without further reasoning, the order stated that Subway was required to resume making the interim payments directly to Developments "for and after the July 2023 compensation period until the conclusion of this Arbitration." *Id.* The arbitrator also ordered Subway to provide appropriate supporting documents to Developments until the end of the arbitration and to turn over the payments that had been made to Subway's own attorneys. *Id.*

The arbitrator entered a subsequent order on April 3, 2024, imposing sanctions if Subway failed to comply with the arbitrator's January 12 order. Dkt. 42-1. And on April 30, 2024, the arbitrator denied Subway's motion to stay the January 12, 2024 order. Dkt. 44-1. On May 10, 2024, the arbitrator provided a statement of reasons in connection with her order on the motion to stay. Dkt. 44-2. Among other things, in response to Subway's argument that interim payments were only required for arbitrations conducted on an expedited basis, the arbitrator explained that the requirement for an expedited procedure "is simply not a condition for the 50% payments" given the contractual language the parties agreed to. *Id.* ¶ 3. Plus, "the parties, particularly [Subway],

agreed over a year ago that the instant arbitration could not be heard according to the Expedited Procedures without truncating the due process rights of the parties." *Id.*

## DISCUSSION

The parties agree that this case is governed by the New York Convention because it concerns two parties with their principal place of business outside the United States. *See Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983); *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 (2d Cir. 2022). Since the arbitration is taking place in the United States, the domestic provisions of the Federal Arbitration Act (FAA) also apply. *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).

Subway argues that the arbitrator's order exceeded her authority and so must be vacated pursuant to section 10(a)(4) of the FAA. Developments says that the Court should (1) dismiss Subway's petition because the arbitrator's order is not a final award subject to review or, in the alternative, (2) confirm the award. The Court concludes that the order is final, and that there is no basis for vacatur because the arbitrator acted within her authority under the plain terms of the arbitration agreement. For the same reason, confirmation of the order is required.

### I. Finality

"Under the Federal Arbitration Act, a district court does not have the power to review an interlocutory ruling by an arbitration panel." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) (citation omitted). "The language of the Act is unambiguous: it is only after an award has been made by the arbitrators that a party can seek to attack any of the arbitrators' determinations in court, by moving either to vacate the award or to modify or correct it." *Id.* (citation omitted). "[A] district court is without authority to review the validity of arbitrators' rulings prior to the making of an award" or to review "an interim ruling that does not purport to resolve finally the issues submitted to them." *Id.*

Generally, "an arbitration award, to be final, must resolve all the issues submitted to arbitration, and … it must resolve them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998) (emphasis omitted). In some situations, an arbitration order will be considered final if it does "not dispose of all claims that were submitted to arbitration," because it "finally and conclusively disposed of a separate and independent claim." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (citation omitted).

*Home Insurance Company v. RHA/Pennsylvania Nursing Homes, Inc.*, 127 F. Supp. 2d 482 (S.D.N.Y. 2001), is instructive. The *Home Insurance* court considered an arbitration order issued prior to the arbitration hearing, holding "that respondent concededly owed petitioner at least $408,560 and entered an award requiring respondent to pay that amount promptly, even before

3

proceeding to hearings on the remaining portion of petitioner's claim." *Id.* at 487. The court found that the order was final for the purpose of confirmation. *Id.* at 488–490.

For one thing, "the arbitrators' decision would be utterly unreviewable by an application to confirm or vacate the final award in the matter." *Id.* at 489. For another, the order could be viewed as "a separate and independent claim," because "the award in question … has determined that petitioner is entitled to possession of the $408,560 during the pendency of the arbitration and any subsequent proceedings with respect to the award." *Id.* at 487–88. And other cases, the court reasoned, supported "the view that the arbitrators' determination to award immediate possession of a sum they viewed as concededly owed is separate from the controversy surrounding the petitioner's claim for additional sums." *Id.* at 488. For example, in *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280 (2d Cir. 1986), the Second Circuit held that an interim order was final when it resolved only counterclaims brought in the arbitration. *Id.* at 281.

This case is like *Home Insurance*. Here too, there will be no way to challenge the order at the end of the arbitration. And here too, the arbitrator determined who would possess certain money during the pendency of the arbitration. While the arbitrator's order did not resolve the entirety of the dispute, it is "final in [this] very important respect," which renders it reviewable. *Home Insurance*, 127 F. Supp. 2d at 487.

Developments says *Home Insurance* is distinguishable because the award there was based on a determination of liability, whereas here there was no such determination. Dkt. 40 at 4, Dkt. 29 at 10. But it's not clear why that distinction makes a difference. Other courts in this circuit have found interim orders final even when they were not based on the merits of the dispute. For example, in *Ecopetrol S.A. v. Offshore Exploration & Production LLC*, 46 F. Supp. 3d 327 (S.D.N.Y. 2014), the court held that an interim order was final when it resolved which party would pay a tax liability (and from what account) pending the resolution of the arbitration. *Id.* at 337. The interim order had no bearing on "ultimate liability," and it clarified that the party making the payment may "ultimately be entitled to, among other relief, the return of the amounts paid pursuant to this Order" based on the ultimate merits of the arbitration. *Id.*[1]

Similarly, in *Daum Global Holdings Corp. v. Ybrant Digital Ltd.*, 2014 WL 896716 (S.D.N.Y. Feb. 20, 2014), the court held an interim arbitration order to be final when it required one party to pay $250,000 to cover its half of the fees and costs of the arbitration. *Id.* at *1–2. The court acknowledged that the sum might be subject to "later readjustment," but found that this fact was of no moment because the amount specified in the order was "immediately payable." *Id.* at *2. Bottom line, an interim order need not resolve the merits of an issue to be arbitrated to be reviewable.

---

[1] Developments says that *Ecopetrol* "definitively resolved the rights and obligations of the parties with respect to Offshore's obligation to pay initially Savia's tax liability" whereas the interim order here is not based on Subway's liability. Dkt. 40 at 4 (quoting 46 F. Supp. 3d at 338 n.3). But that argument misreads *Ecopetrol*, which uses the word "liability" to refer to a tax liability (*i.e.* debt) that one party would need to pay pending a final arbitration decision. It was not referring to liability in the sense of whose obligation it was to ultimately shoulder that debt.

4

Moreover, "numerous district courts in this Circuit have held that an arbitration panel's interim order requiring prejudgment security is sufficiently final to allow for federal court review." *Banco de Seguros del Estado v. Mut. Marine Offs., Inc.*, 230 F. Supp. 2d 362, 369 (S.D.N.Y. 2002) (collecting cases). The arbitration order here is like a prejudgment-security order, since it determines temporary control over the money that would be used to secure any potential judgment. So this order is likewise final for the purpose of judicial review.

## II.     Petition to Vacate

The next question is whether the order should be vacated. "A court's review of an arbitration award is … severely limited, so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (cleaned up). "Therefore, in order to obtain vacatur of the decision of an arbitral panel under the FAA, a party must clear a high hurdle." *Id.* (internal quotation marks omitted). "[T]he Court owes 'strong deference' to 'arbitral awards and the arbitral process.'" *Wells Fargo Advisors LLC v. Tucker*, 373 F. Supp. 3d 418, 423 (S.D.N.Y. 2019) (quoting *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007)).

Subway points to section 10(a)(4) of the FAA. This section allows a party to seek vacatur of an award when the arbitrator "exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "[A]n arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011). The Second Circuit has "consistently accorded the narrowest of readings" to section 10(a)(4). *Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49, 50–51 (2d Cir. 2015) (cleaned up). "Indeed, only where an arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 161 (2d Cir. 2021) (cleaned up). "The moving party bears the burden of proof, and the showing required to avoid confirmation is very high." *Wells Fargo*, 373 F. Supp. 3d at 423 (internal quotation marks omitted).

The issue of the interim payments was plainly submitted to the arbitrator by Developments (Subway doesn't argue otherwise). *See* Dkt. 1-12 at 3. Subway instead argues that the order was prohibited by the terms of the parties' agreements. According to Subway, the interim order provides equitable relief, and section 18 of both agreements restricts the arbitrator's decision "to a ruling on the validity of the termination and an award or denial of the request for reinstatement, and damages." Dkt. 1-2 § 18. Since section 18 doesn't include equitable relief, Subway says the arbitrator's order exceeded her contractual authority. The Court disagrees. Even assuming Subway is correct that the ordered relief is equitable in nature, Subway has not met its burden of showing that the arbitrator acted outside the scope of her authority.

5

The arbitration clause—which applies to "any dispute between the parties regarding termination of this Agreement by the Company"—states that "[t]he decision of the arbitrator shall be restricted to a ruling on the validity of the termination and an award or denial of the request for reinstatement, and damages." Dkt. 1-2 § 18. The same section then explains the 50% interim payments and finally outlines what damages the arbitrator should award:

> If the termination is determined to have been wrongful, the Company shall be required to reinstate the Development Agent and pay to the Development Agent the remaining 50% of any compensation that was withheld for the period. If the termination is determined to have been proper, the Development Agent shall refund all compensation paid by the Company for the period … after the effective date of the termination.

*Id.* The arbitrator's order—as explained during the October 4 hearing—plainly falls within the scope of this provision.

As the arbitrator held during the October 4 hearing, the arbitration provision states that "[t]his section shall apply to the resolution of *any dispute* between the parties regarding the termination of this Agreement by the Company." Dkt. 1-2 § 18 (emphasis added). And then that same section lays out the requirements of an arbitration and a procedure for interim payments pending a resolution of the arbitration. Since the parties' dispute over the interim payments flows from the termination, it falls within the scope of the arbitration provision.

The order also directly enforces the plain terms of section 18. That provision states that "[f]or the period between the effective date of the termination and the date of arbitrator's decision, the Company shall pay the Development Agent at 50% of the amount otherwise due in accordance with this Agreement." Dkt. 1-2 § 18. And the arbitrator's order says that Subway "shall forthwith pay, and resume paying, directly to Developments, the Interim payments … contemplated by s. 18." Dkt. 1-1 at 1. Clearly the order is not "directly contrary to the parties' agreement" as Subway argues. Dkt. 1 at 14.[2]

The "damages" language of section 18 that Subway focuses on must be read in context. Here, there is no plausible way to read section 18 to afford anyone other than the arbitrator with authority to enforce Subway's obligation to make the interim payments. The interim payment obligation is set forth *in the arbitration clause*, sandwiched between provisions setting forth the arbitration's other features. It is clearly part-and-parcel to an ongoing arbitration and directly related to the ultimate damages that the arbitrator is authorized to award.

In fact, the damages that the arbitrator is required to award at the end of the arbitration is set forth in terms of the interim payments—either to order the remaining 50% to be paid to Developments if the termination was wrongful, or the 50% paid by Subway to be returned if the

---

[2] Subway also agrees in its petition that any arbitration was required to be brought in AAA under its Commercial Arbitration Rules. Dkt. 1 at 4. Those background rules make clear that "[t]he arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief . . . ." AAA Comm. Arb. R. 37(a).

termination was legitimate. Any reasonable person would understand the arbitrator's authority under section 18 to encompass enforcement of the interim-payment obligation. Instead, what's excluded by the language that Subway relies on are disputes wholly unrelated to contract termination or damages, like a case about the type of bread to be used in sandwiches or remedies like a permanent injunction. None of that is at issue here. Of course, the parties could have made clear that any request for relief based on failure to make the required payments set forth in the arbitration clause was *not* within the arbitrator's purview. They didn't.

Subway also argues that the interim-payment obligation solely applies to an arbitration that happens in an expedited fashion. Under the contract, the parties must use their "best efforts" to finish the arbitration in 60 days. Dkt. 1-2 ¶ 18. Subway repeatedly suggests that the interim payments were not meant to continue for nearly two years, as they have here. *See* Dkt. 39 at 4. But there is no language in section 18 limiting the interim-payment obligation to proceedings completed within sixty days, nor any obligation for the parties to complete the arbitration within that timeframe. There is just a "best efforts" clause, and notably, the record does not indicate that Subway ever sought a faster arbitration process than it got. The arbitrator herself noted this in a recent order. Dkt. 44-2 ¶ 3.

The arbitrator also concluded that Subway waived any argument about the arbitrator's authority by failing to raise the argument when Developments first made a motion about payments in January 2023. Dkt. 30-11 at 69:20–70:15, *id.* at 82:17–22; *see also* Dkt. 44-2 ¶ 2. Subway does not raise any argument in its petition that the arbitrator erred in making this determination.

Suffice it to say that Subway fails to meet the high standard to demonstrate that the arbitrator exceeded her authority here. Where an arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority," *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987), the Court will "uphold a challenged award as long as the arbitrator offers 'a barely colorable justification for the outcome reached.'" *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (quoting *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)). "It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (cleaned up).

In terms of the cases, Subway principally relies on *Leed Architectural Products, Inc. v. United Steelworkers of America, Local 6674*, 916 F.2d 63 (2d Cir. 1990). In *Leed*, an arbitrator held that a company violated a collective bargaining agreement by paying one worker at a higher rate, and then concluded that the company was "estopped" from arguing that the higher rate should not be paid to all workers. *Id.* at 64–65. The Second Circuit held that the award should be vacated because the arbitrator's findings indicated that the company "violated not only the contract but also the National Labor Relations Act," and the arbitrator's decision was "in effect ratifying" this violation by requiring it to pay everyone the "unlawfully arrived at rate," which should properly be "the subject of mandatory bargaining." *Id.* at 66. The Second Circuit also noted that the

7

arbitrator's decision violated the collective bargaining agreement, since the agreement denied the arbitrator the right to "add to, subtract from or any way modify" the agreement. *Id.* at 66–67.

But here, the interim-payment obligation is specifically referenced in the parties' arbitration clause, and for all the reasons set forth above, the arbitrator did not exceed her authority in enforcing it. Unlike *Leeds*, there is no plausible argument that the arbitrator violated the law or the terms of a governing contract. *Cf. Collins & Aikman Floor Coverings Corp. v. Froehlich*, 736 F. Supp. 480, 484 (S.D.N.Y. 1990) (arbitrator exceeded authority when damages award considered certain post-termination events, but the arbitration agreement explicitly prohibited such events from being considered). The Court declines Subway's invitation to read implicit restrictions into the contract that defy the plain and ordinary meaning of its terms.

Subway also cites to the Supreme Court's decision in *Stolt-Nielsen*. There, the parties entered into a stipulation saying that they had not reached an agreement on class arbitration. 559 U.S. at 668–69. So the Supreme Court reasoned that the arbitrators' decision to mandate class arbitration could not have been based on anything but the arbitrators' own preferences. *Id.* at 676–77. Here, by contrast, the requirement that Subway make interim payments to Developments is clearly stated in the arbitration clause itself. Subway cannot seriously dispute that the parties here intended the interim payments to be made. And there is nothing in the parties' agreements indicating that they intended anyone but the arbitrator to enforce this requirement.

The underlying dispute in this case is straightforward. The arbitration provision says that Subway "shall pay the Development Agent" during "the period between the effective date of the termination and the date of arbitrator's decision." Dkt. 1-2 § 18. Yet Subway refused to do so. This is an unmistakable breach of the contract, and if left unremedied, it would require the arbitrator to deviate from the method of awarding final damages that the parties' agreements contemplate. The arbitrator has authority to enforce that obligation.

### III. Petition to Confirm

Under the New York Convention, "a court must confirm an arbitral award 'unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the Convention.'" *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016) (quoting 9 U.S.C. § 207); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) ("Under the terms of § 9 [of the FAA], a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11"). "Having denied the petition to vacate or modify the arbitration award, the Court must now confirm that award." *Adult Use Holdings Inc. v. FaZe Clan Inc.*, 631 F. Supp. 3d 174, 185 (S.D.N.Y. 2022).

## CONCLUSION

For the reasons stated above, the petition to vacate or modify the arbitration order is DENIED, the motion to dismiss the petition is DENIED, and the petition to confirm is GRANTED.

The Clerk of Court is directed to terminate Dkt. 28 and close the case.

SO ORDERED.

Dated: June 21, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge